IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
CASE NO. 5:21-cv-0137-FL

| | | |
|---|---|---|
| 360 VIRTUAL DRONE SERVICES LLC and MICHAEL JONES, | ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) ) | |
| ANDREW L. RITTER, in his official capacity as Executive Director of the North Carolina Board of Examiners for Engineers and Surveyors; and JOHN M. LOGSDON, JONATHAN S. CARE, DENNIS K. HOYLE, RICHARD M. BENTON, CARL M. ELLINGTON, JR, CEDRIC D. FAIRBANKS, BRENDA L. MOORE, CAROL SALLOUM, and ANDREW G. ZOUTWELLE, in their official capacities as members of the North Carolina Board of Examiners for Engineers and Surveyors, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | **MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| Defendants. | ) ) | |

Defendants, through counsel, respectfully submit this Memorandum in Support of Defendants' Motion for Summary Judgment pursuant to Rules 12(b)(1) and 56 of the Federal Rules of Civil Procedure.

## NATURE OF THE CASE

Plaintiffs assert a single cause of action under the First Amendment's Speech Clause "to create useful information (aerial images and related data) and disseminate

that information to willing customers."[1]  In so doing, Plaintiffs challenge the regulation of land surveying in North Carolina.

Plaintiff 360 Virtual Drone Services, LLC ("Virtual Drone") uses drone technology to provide videography services and photography services for clients[2]. Plaintiff Virtual Drone advertised its ability to provide "Surveying and Mapping" to customers.  Based on this offer to provide "Surveying and Mapping," the North Carolina Board of Examiners for Engineers and Surveyors (the "Board") commenced an investigation in December 2018 to determine if Virtual Drone was practicing or offering to practice land surveying in North Carolina without a license.

Following its investigation, the Board placed Virtual Drone "on notice that practicing, or offering to practice, land surveying in North Carolina, as defined in G.S. 89C-3(7)" without a license is a violation of the Act.  No action or enforcement was taken against Virtual Drone.  Indeed, the notice acknowledged that the Board has no authority to enforce the Act ("[a]n occupational licensing board does not have the authority to order discontinuance of current practices.")[3].  Finally, the notice provided that Virtual Drone had the right, prior to the initiation of any court action, to request a declaratory ruling from the Board regarding whether Virtual Drone's particular conduct was lawful.[4]

Plaintiffs did not seek a declaratory ruling from the Board.  Instead, Plaintiffs filed the above-captioned action making a pre-enforcement challenge under the First

---

[1]  ECF Doc. 1, Complaint (Introduction).
[2]  Rule 30(b)(6) Deposition of Virtual Drone ("Virtual Drone Depo") p. 28
[3]  ECF Doc. 1-1.
[4]  ECF Doc. 1-1.

Amendment. Virtual Drone voluntarily stopped advertising its ability to provide "Surveying and Mapping" to customers. However, Virtual Drone does not claim a deprivation of rights related to the decision to cease advertising its ability to provide "Surveying and Mapping."[5] Instead, Virtual Drone complains of future injury due to the cessation of its services as outlined in Paragraph 77 of the Complaint.[6]

Prior to receiving the notice from the Board in June 2019, Virtual Drone provided the following services to customers: (1) videography services; (2) photography services; and (3) marketing images of land that included the approximate position of property boundaries[7].

> **Q. And prior to June of 2019, had you ever been hired to provide any measurable maps to clients?**
>
> **A. No, sir.**
>
> **Q. And prior to June of 2019, had you ever been asked to provide maps with location data?**
>
> **A. No, Sir.**
>
> **Q. And prior to June of 2019, had you ever been asked to provide maps with elevation data?**
>
> **A. No, sir.**
>
> **Q. And prior to June of 2019, had you ever been asked to provide maps with volume data?**
>
> **A. No, sir.**
>
> **\* \* \***

---

[5] ECF Doc. 1, Complaint.
[6] ECF Doc. 1, Complaint at ¶¶ 77 and 82.
[7] Virtual Drone Depo pp. 28 and 43.

> **Q.** Have you ever produced a 3D model to a client or a third party?
>
> **A.** No, because it's very hard and I didn't get far enough in the learning process.[8]

Following receipt of the notice, Virtual Drone continued to offer both videography and photography services to clients[9]. However, Virtual Drone stopped offering marketing images of land that included the approximate position of property boundaries[10].

> **Q.** I guess so we're clear, you were hired and you had provided marketing maps to clients where you would draw the property boundaries, right?
>
> **A.** Not marketing maps. Aerial photos.
>
> **Q.** Aerial photos with - - sorry. Aerial photos with approximate property boundaries for marketing purposes?
>
> **A.** Yes, sir.
>
> **Q.** Okay. But other than that service, there was no other service that you previously provided that you had to stop providing, right?
>
> **A.** I don't think so. I think that was it.[11]

On this issue, the Board has declared that providing services of marketing images of land that include the approximate position of property boundaries is not the practice of surveying. In short, the Board disavowed any intention to initiate a future action

---

[8] Virtual Drone Depo pp. 41-42 and 50.
[9] Virtual Drone Depo p. 52.
[10] Virtual Drone Depo p. 42.
[11] Virtual Drone Depo pp. 44-45.

4

to enforce the Act on the issue of marketing images of land that includes the approximate position of property boundaries.

As such, Virtual Drone continues to do, or is allowed to so, each of the services it provided to clients prior to receiving the notice from the Board. There is no actual case or controversy before this Court. Plaintiffs lack standing and this case must be dismissed for lack of subject matter jurisdiction.

Plaintiffs' free speech claim challenging the licensing laws of land surveyors fails because the Act regulates professional conduct, not speech. Even if speech is somehow implicated, the Act fits within the Supreme Court's exception for professional regulations that incidentally affect speech. Under this exception, the Act easily satisfied the constitutional analysis of intermediate scrutiny.

## **UNDISPUTED FACTS**

### I. **REGULATION OF LAND SURVEYING IN NORTH CAROLINA**

North Carolina regulates land surveying through its Engineering and Land Surveying Act. [SOF ¶ 1]. The Legislature designated the practice of Land Surveying as a profession. [SOF ¶ 3]. "Land surveying encompasses a number of disciplines including geodetic surveying, hydrographic surveying, cadastral surveying, engineering surveying, route surveying, photogrammetric (aerial) surveying, and topographic surveying." [SOF ¶ 4]. Photogrammetry is the art, science, and technology of obtaining reliable information about physical objects and the environment through processes of recording, measuring, and interpreting photographic images and patterns of recorded radiant electromagnetic energy and

5

other phenomena.  [SOF ¶ 48].  Applications include the measuring of coordinates; the quantification of distances, heights, areas, and volumes; the preparation of topographic maps; and the generation of digital elevation models and orthophotographs.  [SOF ¶ 48].

"The Act prohibits any person from practicing or offering to practice land surveying in North Carolina without first being licensed by the Board."  [SOF ¶ 1].

## II.  VIRTUAL DRONE'S BUSINESS ACTIVITIES

Plaintiff Michael Jones ("Jones") incorporated 360 Virtual Drone Services, LLC ("Virtual Drone") in October 2017.  [SOF ¶ 7].  Virtual Drone is wholly owned by Jones.  [SOF ¶ 8].  Jones does not individually offer any services or transact any business under his name.  [SOF ¶ 9].

Between 2017 and 2021, Virtual Drone used drones and cameras to provide photography and videography services to clients.  [SOF ¶¶ 10-11].  Jones received no formal instruction regarding photography or the use of drones.  [SOF ¶¶ 13-14].

Jones has no experience in the field of photogrammetry.  [SOF ¶ 15].  Virtual Drone has never provided photogrammetry services to paying customers.  [SOF ¶ 16]. Jones is not a licensed land surveyor in North Carolina nor anywhere else.  [SOF ¶ 17].  Virtual Drone is not licensed as a land surveying business in North Carolina nor anywhere else.  [SOF ¶ 18].

## III.  BOARD INVESTIGATION

In early 2019, the Board mailed Jones and Virtual Drone a notice that the Board "had initiated an investigation concerning charges that 360 Virtual Drone

6

Services, LLC is practicing or offering to practice surveying without a license as required by F.S. 89C." [SOF ¶ 19]. Prior to receiving notice from the Board, Virtual Drone advertised that it offered "surveying" and "mapping" services. [SOF ¶ 20]. Jones told the Board that Virtual Drone offered orthomosiac maps or measurable maps. [SOF ¶ 21].

The Board mailed Jones and Virtual Drone a letter dated June 13, 2019 that, after conducting an investigation, "the Board's Review Committee has determined that there is sufficient evidence to support the charge that 360 Virtual Drone Services, LLC is practicing, or offering to practice, surveying in North Carolina, as defined in G.S. 89C-3(6) without being licensed with this Board." [SOF ¶ 31]. Plaintiffs were placed on notice that practicing, or offering to practice, land surveying in North Carolina without being licensed with the Board is a violation of the Act. [SOF ¶ 32].

The following notice was provided to Jones in Exhibit 1 [SOF ¶ 33]:

> You are hereby notified that the opinion expressed herein is not a final legal determination. An occupational licensing board does not have the authority to order discontinuance of current practices. Only a court may determine that the law has been violated or is being violated and, if appropriate, impose a remedy or penalty for the violation. Further, pursuant to G.S. 150B-4, and per Board Rule 21 NCAC 56 .1205, you may have the right, prior to initiation of any court action by the occupational licensing board, to request a declaratory ruling regarding whether your particular conduct is lawful.

At no time has the Board initiated any enforcement proceedings against Plaintiffs. [SOF ¶ 34]. Plaintiffs did not seek a declaratory ruling from the Board for any of the services identified in Paragraph 77 of the Complaint. [SOF ¶ 35].

## IV. PLAINTIFFS VOLUNTARILY STOPPED PROVIDING CERTAIN SERVICES WITHOUT SEEKING A DECLARATOIN FROM THE BOARD

After receiving the June 2019 notice from the Board, Virtual Drone continued to provide aerial images to clients. [SOF ¶ 39]. After receiving the June 2019 notice from the Board, Plaintiff Virtual Drone continued to provide aerial videography to clients. [SOF ¶ 40]. However, Virtual Drone stopped providing aerial images of land that included approximate boundary lines for marketing purposes. [SOF ¶ 43]. The Board's position is that taking aerial photographs for the purpose of producing a PDF picture without measurable information is not the practice of land surveying. [SOF ¶ 44]. As such, the Board disavows any intent to initiate enforcement proceedings against Plaintiffs based on the act of producing a PDF image of a map that does not contain measurable information. [SOF ¶ 44].

Prior to June 2019, Virtual Drone was never hired to provide the following services: (1) measurable maps to clients[12]; (2) an orthomosaic map[13]; (3) maps with

_____

[12] SOF ¶ 22.
[13] SOF ¶ 23.

location data[14]; (4) maps with coordinates[15]; maps with elevation data[16]; (5) maps with volume data[17]; (6) measurements[18] and (7) 3D modeling[19].

In 2019, Virtual Drone created one PDF image of an orthomosaic map for marketing purposes, but no client hired it to perform this service. [SOF ¶ 36]. A PDF copy of an orthomosaic map does not provide clients the ability to perform calculations or measurements on volume or distance. [SOF ¶ 37]. Plaintiffs have no intent to offer clients any type of mapping other than a PDF copy of the orthomosaic map. [SOF ¶ 38].

As part of the lawsuit, Plaintiffs are not trying to provide data to allow clients the ability to perform calculations for location, size, shape, and physical features of the earth. [SOF ¶ 41]. Plaintiffs are seeking the ability to provide aerial images of land that include approximate boundary lines for marketing purposes. [ECF Doc. 1 at ¶ 77(b)]. It is the position of the Board that taking aerial photographs for the purpose of producing a PDF picture without measurable information is not the practice of land surveying. [SOF ¶ 46]. As such, the Board disavows any intent to initiate enforcement proceedings against Plaintiffs based on the act of producing a PDF image of a map that does not contain measurable information. [SOF ¶ 46].

## ARGUMENT

## I.    THE COURT LACKS SUBJECT MATTER JURISDICTION

---

[14] SOF ¶ 24.
[15] SOF ¶ 25.
[16] SOF ¶ 26.
[17] SOF ¶ 27.
[18] SOF ¶ 28.
[19] SOF ¶ 29.

### A.    Lack of Standing

Article III of the United States Constitution "gives federal courts jurisdiction only over cases and controversies, and the doctrine of standing identifies disputes appropriate for judicial resolution." *Miller v. Brown*, 462 F.3d 312, 316 (4th Cir. 2006). "The doctrine of standing gives meaning to these constitutional limits by identifying those disputes which are appropriately resolved through the judicial process." *Wikimedia Found v. Nat'l Sec. Agency*, 857 F.3d 193, 207 (4th Cir. 2017). The doctrine of standing is "an integral component of the case or controversy requirement," *id.*, and has three elements:

> First, the plaintiff must have suffered an injury in fact -- an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of -- the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Lujan v. Defenders of Wildlife*, 504 U.S. 556, 560 (1992) (internal quotation marks, citations, and alterations omitted).

Subject matter jurisdiction is a threshold question that relates to the power of the court to hear a case and must be resolved before a court addresses the merits of the First Amendment claim. *See Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 479-80 (4th Cir. 2005). Plaintiff has the burden of proving subject matter jurisdiction. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982).

Case 5:21-cv-00137-FL    Document 34    Filed 03/25/22    Page 10 of 34

"[E]ach element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.,* with the manner and degree of evidence required at the successive stages of the litigation." *Lujan* at 561.

### 1. Injury-in-Fact

"To establish injury in fact, a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016). The injury-in-fact requirement ensures that the plaintiff has a "personal stake in the outcome of the controversy." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014). A plaintiff alleging a future injury must show "the threatened injury is certainly impending, or there is a substantial risk that the harm will occur." *Id.* Standing requirements are somewhat relaxed in First Amendment cases but a plaintiff "must nevertheless satisfy the injury-in-fact requirement grounded in Article III." *Benham v. City of Charlotte*, 635 F.3d 129 (4th Cir. 2011) (citing *Virginia v. Am. Booksellers Ass'n*, 484 U.S. 383, 392-93 (1988)).

Plaintiffs' pre-enforcement challenge identifies four services that are at issue in this First Amendment challenge[20]:

1. "Capturing aerial images on behalf of paying clients and using orthomosaic software to stich those aerial images together to form orthomosaic maps." [ECF Doc. 1 at ¶ 77(a)].

---

[20] "The Act and Board's associated rules and policies thus prohibit and prevent Plaintiffs from offering and providing the services detailed at Paragraph 77 to paying clients, and these laws (and the Board's enforcement of them) are enough to chill or silence persons of ordinary firmness from communicating information in this way. [ECF Doc. 1 at ¶ 82].

2. "Creating marketing images of land on behalf of paying clients and drawing on those images lines indicating the approximate position of property boundaries." [ECF Doc. 1 at ¶ 77(b)].

3. "Capturing aerial images of land and structures (along with location data, coordinates, elevation data, and volume data) and making those images and that data available to paying clients." [ECF Doc. 1 at ¶ 77(c)].

4. "Capturing aerial images of and data about land and structures; processing those images and data to create 3D digital models of land and structures; and making those 3D digital models available to paying clients." [ECF Doc. 1 at ¶ 77(d)].

**Paragraph 77(a) – orthomosaic maps**

With respect to the service of providing orthomosaic maps to paying customers identified in Paragraph 77(a), Virtual Drone never provided any such services in the field of photogrammetry. [Virtual Drone Depo p. 12]. Plaintiff Virtual Drone defined photogrammetry as the process of making "orthomaps of the earth by having multiple pictures stitched together to create one large picture or map." [Virtual Drone Depo p. 13]. Stated another way, Plaintiff Virtual Drone never provided any measurable maps to paying customers – "I did not create any maps for anyone." [Virtual Drone Depo p. 35]. As such, Plaintiffs lack standing to assert a First Amendment challenge on the issue of orthomosaic or measurable maps:

> **Q.    And prior to June of 2019, had you ever been hired to provide any measurable maps to clients?**
>
> **A.    No, sir.**

[Virtual Drone Depo p. 41].

**Paragraph 77(c) – aerial images with location data, coordinates, elevation data, and volume data**

With respect to the service of providing aerial images with location data, coordinates[21], elevation data, and volume data to paying customers in Paragraph 77(c), Virtual Drone never provide any such services.

> **Q.** **And prior to June of 2019, had you ever been asked to provide maps with location data?**
>
> **A.** **No, Sir.**
>
> **Q.** **And prior to June of 2019, had you ever been asked to provide maps with elevation data?**
>
> **A.** **No, sir.**
>
> **Q.** **And prior to June of 2019, had you ever been asked to provide maps with volume data?**
>
> **A.** **No, sir.**

[Virtual Drone Depo p. 42].

> **Q.** **And prior to June of 2019, no client ever asked you for aerial images with coordinates?**
>
> **A.** **No.**

[Michael Jones Depo p. 108]. Plaintiffs lack standing to assert a First Amendment challenge on the issue of aerial images with location data, coordinates, elevation data, and volume data.

### **Paragraph 77(d) – 3D digital models**

With respect to the service of providing 3D digital models of land and structures to paying customers in Paragraph 77(d), Virtual Drone never provide any such services:

---

[21] Michael Jones testified that "coordinates is the same as location. [Michael Jones Depo p. 103].

> **Q.** **And you've never been asked to produce a 3D model?**
>
> **A.** **No.**

[Virtual Drone Depo p. 50]. Indeed, Virtual Drone did not even know how to prepare a 3D digital model:

> **Q.** **Have you ever produced a 3D model to a client or a third party?**
>
> **A.** **No, because it's very hard and I didn't get far enough in the learning process.**

[Virtual Drone Depo p. 50]. Plaintiffs lack standing to assert a First Amendment challenge on the issue 3D models.

Plaintiffs may satisfy the injury-in-fact requirement by showing self-censorship – that is, "when a claimant is chilled from exercising her right to free expression." *Benham v. City of Charlotte*, 635 F.3d 129, 135 (4th Cir. 2011). Subjective or speculative accounts of such a chilling effect are not sufficient. Any chilling effect must be objectively reasonable. *Id.* "To decide the objective reasonableness of the claimed chilling effect from the Act, the court evaluates whether there is a credible threat of enforcement against the plaintiff." *People for the Ethical Treatment of Animals, Inc. v. Stein*, 466 F. Supp. 3d 547, 561 (M.D.N.C. 2020) (internal quotations omitted). To show injury-in-fact, Plaintiffs must establish that (1) they have engaged in the course of conduct arguably affected with a constitutional interest and (2) that they have ceased engaging in their planned activities out of fear of liability under the Act. *Id.* at 561-62.

14

Recognizing the need to establish prior conduct on the services at issue, Plaintiffs allege self-censorship and the inability "to resume" its activities. [ECF Doc. 1 at ¶ 83]. Plaintiffs next allege that they "would offer and provide the services described in Paragraph 77 but for the fact that the Act and the Board's associated rules and policies make it illegal to do so." [ECF Doc. 1 at ¶ 84]. Unfortunately for Plaintiffs, the facts establish that the only service that was stopped involved a service that is not considered by the Board to be the practice of land surveying.

In a pre-enforcement challenge, the Supreme Court held that petitioners had standing because they had "actively engaged in" the proscribed conduct in the past, alleged an intention to continue that conduct in the future, and demonstrated that enforcement was "inevitable." *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979). As stated above, the only service or conduct that Virtual Drone ceased providing was the service outlined in Paragraph 77(b) – creating aerial photos with approximate property boundaries for marketing purposes:

> **Q.** **I guess so we're clear, you were hired and you had provided marketing maps to clients where you would draw the property boundaries, right?**
>
> **A.** **Not marketing maps. Aerial photos.**
>
> **Q.** **Aerial photos with - - sorry. Aerial photos with approximate property boundaries for marketing purposes?**
>
> **A.** **Yes, sir.**
>
> **Q.** **Okay. But other than that service, there was no other service that you previously provided that you had to stop providing, right?**

15

**A.     I don't think so.  I think that was it.**

[Virtual Drone Depo pp. 44-45].  There is no case or controversy because this service or conduct is not considered by the Board to be the practice of surveying.

### 2.     Causation and Redressability

The second standing requirement is causation or traceability.  An injury is traceable if "there [is] a causal connection between the injury and the conduct complained of" by the plaintiff.  *Lujan*, 504 U.S. at 560.  In a pre-enforcement action, Plaintiffs must show that they have refrained from continuing to engage in the proscribed conduct based on a reasonable belief that they will be subject to an enforcement action.   "A plaintiff who challenges a statute must demonstrate a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement."  *Babbitt*, 442 U.S. at 298.

The third standing requirement is redressability.  Redressability is satisfied "where there is a non-speculative likelihood that the injury would be redressed by a favorable judicial decision."  *Cooksey v. Futrell*, 721 F.3d 226, 238 (2013) (internal quotations omitted).  The issue of redressability is related to the doctrine of ripeness.  Ripeness "concerns the appropriate timing of judicial intervention."  *Id.* at 240 (internal quotations omitted).  One issue to consider is whether the Defendant has disclaimed any intention of enforcing the Act as to the Plaintiffs' business activities.  If so, then Plaintiffs have no actual controversy to redress.

### B.     Plaintiffs cannot establish an actual case or controversy

Without an actual controversy between the parties, any declaration by the Court would be nothing more than an advisory opinion, something it may not do. *Fowler v. Alexander*, 478 F.2d 694, 696-97 (4th Cir. 1973). A plaintiff has standing to bring a "pre-enforcement challenge" to a statute when the plaintiff "faces a credible threat of prosecution" under that law. *N.C. Right to Life, Inc. v. Bartlett*, 168 F.3d 705, 710 (4th Cir. 1999). "The threat of prosecution is especially credible when defendants have not 'disavowed enforcement' if plaintiffs engage in similar conduct in the future." *Cawthorn v. Circosta*, 2022 U.S. Dist. LEXIS 42872 (E.D.N.C. Mar. 10, 2022) (citing *Kenny v. Wilson*, 885 F.3d 280, 288 (4th Cir. 2018) and *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014)).

Plaintiffs assert that they have stopped offering aerial images of land that include lines indicating the rough position of property lines. The Board disavowed any intention of seeking enforcement of this activity because the conduct is not the practice of land surveying. [SOF ¶ 46]. As such, Plaintiffs cannot demonstrate a realistic danger of sustaining a direct injury as a result of any possible Board enforcement.

Plaintiffs also claim a desire to offer clients orthomosaic maps in PDF form. This claim fails because Plaintiffs did engage in this activity prior to receiving the complained of notice from the Board. Even so, this activity is not considered the practice of land surveying, and the Board disclaimed any intention of seeking enforcement against the production of PDF maps. [SOF ¶ 44]. As such, there is no

actual case or controversy to resolve by this court, and the case must be dismissed for lack of subject matter jurisdiction.

## II.  PLAINTIFFS' FREE SPEECH CLAIM FAILS BECAUSE THE ACT REGULATES PROFESSIONAL CONDUCT, NOT SPEECH

The lawsuit challenges "a centuries-old profession: land surveyors." [ECF Doc. 1, p. 1].  Plaintiffs assert both a facial challenge and as-applied challenge to the Act in an effort to dismantle the State's regulatory and licensing scheme for land surveyors.  [ECF Doc. 1, ¶ 114 ("Unless N.C. Gen. Stat. ¶¶ 89C-2, 89C-3(7), 89C-23 and 89C-24 are declared unconstitutional and Defendants are enjoined, Plaintiffs will suffer continuing and irreparable harm to their First Amendment rights")].  "The First Amendment, applicable to the States through the Fourteenth Amendment, prohibits laws that abridge the freedom of speech." *Nat'l Inst. Of Family & Life Advocates v. Becerra*, 138 S. Ct. 2361, 2371, 201 L. Ed. 2d 835 (2018).

Plaintiffs bear the burden of establishing that the Act burdens speech, not conduct. *Cornelius v. NAACP Legal Def. & Educ.* Fund, 473 U.S. 788, 797 (1985).  If the Act does not implicate speech protected by the First Amendment, the court "need go no further." *Id.*

The Act regulates the conduct of land surveying, not speech.  Plaintiffs allege that "land surveyors are the professionals who measure and update boundary lines." [ECF Doc. 1, ¶ 35].  The practice of land surveying is defined to include mapping and photogrammetry.  The Act prohibits any person from practicing or offering to practice land surveying without first being licensed by the Board.  [ECF Doc. 1, ¶ 36; *see also* N.C.G.S. § 89C-23].  Plaintiff advertised that it could perform the services of

18

surveying and mapping. The Board put Plaintiffs on notice that Virtual Drone could not practice, or offer to practice, land surveying without a license. [ECF Doc. 1, ¶ 68]. The notice further identified the following conduct that was at issue: "mapping, surveying and photogrammetry". [ECF Doc. 1, ¶ 69].

If the Act regulates mere non-expressive conduct, as opposed to speech, then the First Amendment is not implicated. Plaintiffs complain, in a conclusory fashion, that their speech is implicated in the pre-enforcement notice issued by the Board. [ECF Doc. 1 at ¶ 82]. However, the Supreme Court has long since rejected the notion "that an apparently limitless variety of conduct can be labeled 'speech' whenever the person engaging in the conduct intends thereby to express an idea." *United States v. O'Brien*, 391 U.S. 367, 376 (1968). In this case, the regulation of land surveyors for over 100 years has nothing to do with any message or expressive speech. The Act is content-neutral and seeks to establish minimum qualifications for someone to practice the profession of land surveying. The conduct complained of by Plaintiffs does not involve expressive conduct and does not implicate speech subject to First Amendment protection.

## III. THE ACT FITS WITHIN NIFLA'S EXCEPTION FOR PROFESSIONAL REGULATIONS THAT INCIDENTALLY AFFECT SPEECH AND THE ACT SATISFIED THE CONSTITUTIONAL ANALYSIS OF INTERMEDIATE SCRUTINY

### A. States may regulate professional conduct, even though that conduct incidentally involves speech

At most, the Act's regulation of the profession of land surveying imposes only incidental burdens on speech. Admittedly, courts no longer recognize a "professional

speech" exception to the First Amendment. *NIFLA*, 138 S. Ct. at 2371. However, the Supreme Court in *NIFLA* did "recognize two situations in which states have broader authority to regulate the speech of professionals than that of nonprofessionals." *Capital Associated Indus. v. Stein*, 922 F.3d 198, 207 (4th Cir. 2019). "Professional speech" is defined as any speech based on "expert knowledge and judgment" or that is "within the confines of [the] professional relationship." *NIFLA*. 138 S. Ct. at 2371 (internal quotations omitted). Under this umbrella of professional speech and occupational licensing, the Court held that "[s]tates may regulate professional conduct, even though that conduct incidentally involves speech." *Id.; see also Ohralik v. Ohio State Bar Assn.*, 436 U.S. 447, 456, 98 S. Ct. 1912, 56 L. Ed. 2d. 444 (1978); *Planned Parenthood of Southeastern Pa. v. Casey*, 505 U.S. 833, 884, 112 S. Ct. 2791, 120 L. Ed. 2d. 674 (1992).

In *Ohralik*, the Supreme Court considered an Ohio State Bar Association prohibition on lawyers' in-person solicitation of remunerative employment – "a business transaction in which speech is an essential but subordinate component." *Ohralik*, 436 U.S. at 457. "While this does not remove the speech from the protection of the First Amendment, . . . it lowers the level of appropriate judicial scrutiny." *Id.* In upholding the prohibition, the Court determined that "[a] lawyer's procurement of remunerative employment is a subject only marginally affected with First Amendment concerns," which "falls within the State's property sphere of economic and professional regulation." *Id.* at 459. The Court concluded that the lawyer's conduct was "subject to regulation in furtherance of important state interests." *Id.*

The Court found that the State had a strong interest "in protecting consumers and regulating commercial transactions," and "maintaining standards among members of the licensed professions." *Id.* at 460.

In *Casey*, the Court upheld a law requiring physicians to obtain informed consent before they could perform an abortion. The Court rejected a free-speech challenge to this informed-consent requirement. The joint opinion of the Court explained that the law regulated speech only "as part of the practice of medicine, subject to reasonable licensing and regulation by the State." *Casey*, 505 U.S. at 884. "Even laws that implicate speech quite directly, such as laws requiring doctors – through spoken words – to obtain informed consent from patients before an abortion have not been subjected to strict scrutiny." *Capital Associated Indus.*, 922 F.3d at 208.

"It is true that restrictions on protected expression are distinct from restrictions on economic activity or, more generally, on nonexpressive conduct." *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 567 (2011). "The First Amendment does not prevent restrictions directed at commerce or conduct from imposing incidental burdens on speech." *NIFLA*, 138 S. Ct. at 2373 (quoting *Sorrell*, 564 U.S. at 567). This general principle was further clarified in *NIFLA* in the context of professional speech. States may regulate professional conduct even if that conduct incidentally involves speech. *Id.* A determination that the Act is content-neutral will result in a lower standard of scrutiny. *See Turner Broad. Sys. v. FCC*, 512 U.S. 622, 642 (1994) (content and viewpoint neutral laws are reviewed under an intermediate scrutiny

standard). Intermediate scrutiny is the appropriate standard for reviewing conduct regulations that incidentally affect speech. *Capital Associated Indus.*, 922 F.3d at 208-209.

## B.     The Act is facially neutral

Under the First Amendment analysis, Supreme Court precedent distinguish between content-based and content-neutral regulations of speech. *Id.* "Government regulation of speech is content based if a law applies to particular speech because of the topic discussed or the idea or message expressed." *Reed v. Town of Gilbert*, 576 U.S. 155, 164 (2015).[22]

As such, courts are required to determine whether a regulation "on its face" draws a distinction "based on the message a speaker conveys." *Id.* By contrast, a law is content neutral if it "serves purposes unrelated to the content of expression . . . even if it has an incidental effect on some speakers or messages but not others." *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989). "Government regulation of expressive activity is content neutral so long as it is 'justified without reference to the content of the regulated speech.'" *Id.* (quoting *Clark v. Cmtv. For Creative Non-Violence*, 468 U.S. 288, 293, 104 S. Ct. 3065, 82 L. Ed. 2d 221 (1984)).

The profession of land surveying has long been recognized in North Carolina and is regulated under the Act. This is a "practice act." Only persons duly licensed by the Board are authorized to practice land surveying or offer to practice land surveying as defined in the Act or to hold themselves out as a land surveyor. N.C.G.S.

---

[22] "This commonsense meaning of the phrase 'content based' requires a court to consider whether a regulation of speech 'on its face' draws distinctions based on the message a speaker conveys." *Id.*

Case 5:21-cv-00137-FL   Document 34   Filed 03/25/22   Page 22 of 34

§ 89C-23. The purpose of the Act is to "safeguard life, health, and property, and to promote the public welfare." N.C.G.S. § 89C-2. The Legislature declared that the practice of land surveying is "subject to regulation in the public interest." *Id.* "It is well established that "[a] statute that governs the practice of an occupation is not unconstitutional as an abridgment of the right to free speech, so long as 'any inhibition of that right is merely the incidental effect of observing an otherwise legitimate regulation.'" *Accountant's Soc'y of Va v. Bowman*, 860 F.2d 602, 604 (4th Cir. 1988) (quoting *Underhill Assocs., Inc. v. Bradshaw*, 674 F.2d 293, 296 (4th Cir. 1982)).

If the Act is considered content-neutral, it is "subject to an intermediate level of scrutiny." *Turner*, 512 U.S. at 642; *see also Capital Associated Indus.*, 922 F.3d at 208-209. On its face, the Act's regulation of land surveying has nothing to do with any message or speech.

## C.      The adoption of the Act had nothing to do with speech

If the law is content-neutral on its face, the analysis next requires a court to consider the law's justification or purpose. *Reed.* 576 U.S. at 166. A law may still reflect a content preference if it was "adopted by the government 'because of disagreement with the message [the speech] conveys." *Id.* at 164 (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 791, 109 S. Ct. 2746, 105 L. Ed. 2d 661 (1989)). In making this determination, "[t]he government's purpose is the controlling consideration." *Ward*, 491 U.S. at 791. "[A] regulation that serves purposes unrelated to the context of expression is deemed neutral, even if it has an incidental

23

effect on some speakers or messages but not others." *McCullen v. Coakley*, 573 U.S. 464, 480, 134 S. Ct. 2518, 189 L. Ed. 2d 502 (2014) (quoting *Ward*, 491 U.S. at 791). The Act passes this test.

The purpose of the Act is to "safeguard life, health, and property, and to promote the public welfare." N.C.G.S. § 89C-2. Such a purpose reflects conduct (surveying activities), not the expression of certain content. *See McCullen*, 573 U.S. at 480. The Act applies equally to all who seek offer services to be deemed land surveying. This would be the same for offering legal services without being licensed to practice law. "A regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others." *Ward*, 491 U.S. at 791.

### D. Analogous Recent Fourth Circuit opinion involving the regulation of the practice of law

The Fourth Circuit recently considered a First Amendment challenge brought by a trade association seeking to enjoin the enforcement of North Carolina's unauthorized practice of law (UPL) statutes because the UPL statutes unconstitutionally restricted the associations' First Amendment rights. *Capital Associated Indus. v. Stein*, 922 F.3d 198, 204 (4th Cir. 2019). The Fourth Circuit concluded that North Carolina's ban on the practice of law by corporations fits within *NIFLA*'s exception for professional regulations that incidentally affect speech. *Id.* at 207; *see also Goldfarb v. Va. State Bar*, 421 U.S. 773, 792, 95 S. Ct. 2004, 44 L. Ed. 2d 572 (1975) ("We recognize that the States have . . . broad power to establish standards for licensing practitioners and regulating the practice of professions.").

The Court found that "any impact the UPL statutes have on speech is incidental to the overarching purpose of regulating who may practice law." *Id.* While the Fourth Circuit noted the important distinction between regulation of conduct versus regulation of speech, the Court found that "[l]icensing laws inevitably have some effect on the speech of those who are not (or cannot be) licensed. But that effect is merely incidental to the primary objective of regulating the conduct of the profession." *Id.* at 208.

## IV.   THE ACT SATISFIES THE CONSTITUTIONAL ANALYSIS OF INTERMEDIATE SCRUTINY

"[W]here a plaintiff claims suppression of speech under the First Amendment, the plaintiff bears the initial burden of proving that speech was restricted by the governmental action in question." *Reynolds v. Middleton*, 779 F.3d 222, 226 (4th Cir. 2015) (citations omitted). The only service or conduct restricted involved the production of aerial images of land that include approximate boundary lines for marketing purposes. The Board does not consider this service or conduct to be a violation of the Act. [SOF ¶ 46]. As such, even if this conduct is deemed to be speech, Plaintiffs cannot show a suppression of speech by the Defendants. *See Sorrell*, 564 U.S. at 570 ("An individual's right to speak is implicated when information he or she possesses is subjected to restraints on the way in which the information might be used or disseminated.").

Assuming arguendo that Plaintiffs can meet their initial burden, the burden then falls on the government to prove the constitutionality of the speech. *Reynolds*, 779 F.3d at 226. "When the Supreme Court has reviewed restrictions on conduct that

incidentally burden speech, it has not applied strict scrutiny." *Capital Associated Indus.*, 922 F.3d at 208. Intermediate scrutiny is the appropriate standard for reviewing conduct regulations that incidentally affect speech. *Id.* at 208-209. Under intermediate scrutiny, the State bears the burden of proving that the law is "narrowly tailored to serve a significant governmental interest." *McCullen*, 573 U.S. at 486. To be narrowly tailored, the Act must not "burden substantially more speech than is necessary to further the government's legitimate interests." *Id.* (quoting *Ward*, 491 U.S. at 799). A regulation narrowly tailored to a significant interest "need not be the least restrictive or least intrusive means of doing so." *Ward*, 491 U.S. at 798.

In *Reynolds*, the Court wrestled with the question of "precisely what the [government] must present in order to carry its burden of proof." *Id.* at 227.

> We have not required an evidentiary record to uphold a speech regulation that is materially indistinguishable from one that has been found constitutional by this court or the Supreme Court. *See Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 n.3 (4th Cir. 2012) ("[C]onsistent with over thirty years of case law from the Supreme Court and our court, [the County defendant] has established that the Sign Ordinance passes constitutional muster under the rubric of intermediate scrutiny. It need not reinvent the wheel by coming forward with voluminous evidence justifying a regulation of the type that has been upheld several times over."). Likewise, we generally have not required the government to present evidence to show the existence of a significant governmental interest; common sense and the holdings of prior cases have been found sufficient to establish, for example, that the government has a significant interest in public safety. *See Ross*, 746 F.3d at 555; *American Legion Post 7*, 239 F.3d at 609; *United States v. Chapman*, 666 F.3d 220, 226-27 (4th Cir. 2012) (recognizing that "common sense and case law" can establish the existence of governmental interest in Second Amendment case subject to intermediate scrutiny).

26

The profession of land surveying is a regulated profession in North Carolina, as well as in each State in the United States. The purpose of the Act is to "safeguard life, health, and property, and to promote the public welfare." N.C.G.S. § 89C-2. "The Supreme Court in *McCullen* recognized that protecting property rights is a legitimate government interest." *People for the Ethical Treatment of Animals, Inc. v. Stein*, 466 F.Supp.3d 547, 577 (M.D.N.C. June 12, 2020); *see also McCullen*, 573 U.S. at 486-87 ("We have, moreover, previously recognized the legitimacy of the government's interest[] in . . . protecting property rights . . . ."). Indeed, the Legislature intended its rules on the practice of land surveying to protect property interests in North Carolina. *In re Suttles Surveying*, 227 N.C. App. at 76.

The Legislature declared that the practice of land surveying is "subject to regulation in the public interest." *Id.* Courts have consistently held that "States have a compelling interest in the practice of professions within their boundaries, and that as part of their power to protect the public health, safety, and other valid interests they have broad power to establish standards for licensing practitioners and regulating the practice of professions." *Goldfarb*, 421 U.S. at 792.

Defendants have offered detailed evidence in the form of testimony in support of the contention that the Act serves a significant government interest. Land Surveying is regulated in North Carolina "in order to safeguard life, health, and property, and to promote the public welfare" and is "subject to regulation in the public interest." [SOF ¶ 49].

The regulation and licensing of land surveying in North Carolina works to establish a minimum level of competence (education, exam, and experience) and the Act works to protect the public from negligence, incompetence, and professional misconduct in the profession of land surveying. [SOF ¶ 50]. The Board testified as follows:

> **Q. And my question for you is if we look at this sentence, it says, "The purpose of the Act is to 'safeguard life, health, and property, and to promote the public welfare." My question for you is is safeguarding life, health, and property and promoting the public welfare, are those the governmental interests that are furthered by the act - - by this act?**
>
> **A. Yes.**
>
> **Q. Okay. Can you identify any other interest that the act serves?**
>
> **A. Yes.**
>
> **Q. Okay. What interest?**
>
> **A. What 89-C does is it - - we have a sentence that reads -- and again, I'm paraphrasing. I don't have it in front of me. Gross negligence, incompetence, and misconduct – we're telling the public that we may – we're hiring a licensed surveyor, there's a bar, and the licensed work is going to be above the bar. It's going to be above incompetence, gross negligence, and misconduct. And if its' not above the bar, then the board can hold the licensee responsible for his actions.**
>
> **We're also establishing a minimum level of competence via the three E's – the education, exam, and experience. When somebody gets licensed, what we're telling the citizens of**

> **North Carolina is they have met a minimum level of competence, and the work they're going to receive from the licensee meets that minimum level of competence. If it doesn't, again, then the board by statute has the ability to remedy the situation.**

[Rule 30(b)(6) Deposition of the Board, pp. 10-11].

Additionally, Defendants' disclosure of expert testimony states that licensure in the profession of land surveying "assures our clients and the public that we've met specific standards for education, expertise and experience." [Defendants' Disclosure of Expert Testimony p. 13]. This is particularly important in a profession that provides photogrammetry services – conduct that "is a very complicated and ever evolving science and industry, with challenges and difficulties" that requires trained professionals. [Defendants' Disclosure of Expert Testimony p. 8]. In short, the profession of land surveying is regulated in North Carolina "to protect the public, individuals and businesses, from negligence, incompetence, professional misconduct or any other form of malpractice in the performance of services within the profession" of land surveying. [Defendants' Disclosure of Expert Testimony p. 14].

The Act also protects the public from misrepresentations as to professional status or expertise. Without the Act and the required minimal qualifications to perform land surveying services, the public would be subject to the old proverb known as *caveat emptor* (let the buyer beware). This was confirmed by the testimony of Plaintiffs' so-called expert witness:

> **Q.      And then obviously there's some risks because we talked about errors. And the risks are that I really don't know what I'm doing and I**

> provide a faulty work product to this client who's relying on me to provide accurate information, right?

A. There's the potential for that.

Q. And that potential could not only impact my client but it could impact others, meaning their neighbors, if it's an issue involving boundaries or real estate, correct?

A. Potentially, yes.

\* \* \*

Q. How is the client -- how is the client protected in that scenario against somebody who really doesn't know what they are doing but is often the client services in the field of photogrammetry?

A. That's up to the client.

Q. Okay. So buyer beware?

A. Okay.

Q. Is that true?

A. Yes.

[Alex Abate Depo pp. 65-66]. The licensing laws in North Carolina prevent this situation from happening and work to protect the public. The Board has the ability to hold licensees accountable for incompetence or unethical work. [Defendants' Disclosure of Expert Testimony p. 14]. However, the board has no authority over non-licensees such as Michael Jones and Virtual Drone. [ECF Doc. 1-1].

Finally, the Board works to ensure only conduct that falls within the definition of land surveying is regulated in North Carolina. In order to not burden more conduct

30

that is necessary, the Board has developed a list of activities that are both included and excluded under the Act. [SOF ¶ 45]. Also, individuals have the right to seek a declaratory ruling from the Board on any conduct that may fall under the definition of land surveying. [ECF Doc. 1-1]. In this case, neither Plaintiff sought a declaratory ruling from the Board. [SOF ¶ 35].

## V.  PLAINTIFFS FACIAL CHALLENGE FAILS AS A MATTER OF LAW

Plaintiffs challenge the Act both facially and as applied to them. "The difference between a facial challenge and an as-applied challenge lies in the scope of the constitutional inquiry." *Educ. Media Co. at Va. Tech, Inc. v. Insley*, 731 F.3d 291, 298 (4th Cir. 2013). To succeed on a facial challenge, Plaintiffs must demonstrate that there are "no set of circumstances" in which the Act can be validly applied or that it lacks any plainly legitimate sweep. *Id.* Facial challenges are disfavored. *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450, 128 S. Ct. 1184, 170 L. Ed. 2d 151 (2008). Plaintiffs cannot meet the burden of a facial challenge to the Act – a proper regulation of the professions of both land surveying and engineering.

In contrast, as-applied challenges "test the constitutionality of a statutes applied to the plaintiff based on the record." *Capital Associated Indus.*, 922 F.3d at 204; *see also Insley*, 731 F.3d at 298 (an as-applied challenge is based on a developed factual record and application of a statute to a specific plaintiff). In distinguishing between facial and as-applied challenged, the Fourth Circuit noted the following:

> Under a facial challenge, a plaintiff may sustain its burden in one of two ways. First, a plaintiff asserting a facial

challenge may demonstrate that no set of circumstances exists under which the law would be valid, or that the law lacks any plainly legitimate sweep. Second, a plaintiff asserting a facial challenge may also prevail if he or she show[s] that the law is overbroad because a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep.

*Insley*, 731 F.3d at 298. As stated above, Plaintiffs' as-applied challenge fails and must be dismissed.

## CONCLUSION

For the reasons set forth above, Defendants hereby request that the Court grant its motion for summary judgment and dismiss the First Amendment claim filed by Plaintiffs.

Respectfully submitted this the 25th day of March, 2022.

FITZGERALD HANNA & SULLIVAN, PLLC

/s/ Douglas W. Hanna
Douglas W. Hanna, NCSB #18225
3737 Glenwood Avenue, Suite 375
Raleigh, NC 27612
Telephone: (919) 863-9091
Facsimile: (919) 424-6409
*Attorneys for Defendants*

32

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 56.1(f)

I hereby certify that this brief, excluding the case caption and the certificate of service, is in compliance with word limit of 8400 words.

This the 25th day of March, 2022.

/s/ Douglas W. Hanna
Douglas W. Hanna

## CERTIFICATE OF SERVICE

I hereby certify that I have this day filed the foregoing MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

David G. Guidry, Mainsail Lawyers, dguidry@mainsaillawyers.com

Samuel B. Gedge, Institute for Justice, sgedge@ij.org

James T. Knight II, Institute for Justice, jknight@ij.org

This the 25th day of March, 2022.

/s/ Douglas W. Hanna
Douglas W. Hanna, NCSB #18225

34